## SUPREME COURT.

THE MECHANICS' BANKING ASSOCIATION agt. THE NEW YORK AND SAUGERTIES WHITE LEAD COMPANY.

The liability of a *corporation* upon an *accommodation indorsement* of a negotiable promissory note (which in law they have no authority to make) depends upon the fact whether or not the party prosecuting is a *bona fide* holder for value, without notice.

THIS action was brought to recover the amount of a promissory note drawn for the sum of twelve hundred and fifty dollars.

The pleadings are part of the case, and may be referred to by either party on the argument.

The action was tried on the — day of October, 1858, before the Hon. E. DARWIN SMITH, without a jury.

James McCullough was called as a witness for the plaintiffs, and being sworn, said, that he was at the time of the making the note, and for some time before, president of the Spring Valley Shot and Lead Company, and also of the New York and Saugerties White Lead Company; the companies had no connection in business; he had made and indorsed notes of both companies with the directors' knowledge. Being shown the note in suit, he said : This is the indorsement of the companies by me as president.

Being cross-examined, he said : The note in suit was a note made by James B. Townsend; it was drawn to raise money on; there was nothing paid to Townsend for the

note; the object was to raise money; the companies helped one another; the money raised on this note may possibly have gone to the Spring Valley Company at first; the money did go to the Saugerties Company eventually, but whether in the first instance or not, I do not know.

Being re-examined, he said : The note was originally five thousand dollars, and was discounted by the plaintiffs, and was reduced to $2,500, for which a note was given and discounted by the plaintiffs, and then again reduced to twelve hundred and fifty dollars, for which this note was given and discounted by the plaintiffs.

The plaintiffs here rested, and Charles W. Henry was called as a witness by the counsel for the defendants; he said, that he was secretary of the Saugerties White Lead Company at the time the note was given, and before ; the Spring Valley Shot and Lead Company had no connection with the Saugerties White Lead Company; had seen the note in suit; it was made to raise money for the Spring Valley Shot and Lead Company; the proceeds were received by that Company; the Saugerties White Lead Company received no part of the proceeds of the note.

Being cross-examined, he said : That he had charge of the books and finances of the Saugerties White Lead Company; he knew how the note originated ; it was originally five thousand dollars, which was discounted by the plaintiffs, and then reduced to this; the Saugerties Company, as I think, charged it in their books against the Spring Valley Shot and Lead Company as money lent to them; there was no treasurer of the Saugerties Company; the president signed all the notes, and was financial officer of both companies.

Being again examined by defendants' counsel, he said : That the Spring Valley Shot and Lead Company kept an account with the plaintiffs; the Saugerties White Lead Company did not keep any account with the plaintiffs; none of the proceeds of the original note went to the Sau-

gerties White Lead Company, nor did that company have any benefit of the money.

Defendants here rested, and James W. McCullough was recalled by the counsel for the plaintiffs; he said, he thought the note was loaned by Townsend to the Saugerties White Lead Company, for them to get the money on; thinks they must have got some of it; we wanted money for both companies.

Being cross-examined, he said : The Spring Valley Shot and Lead Company kept their account with the plaintiffs; the Saugerties Company kept no account with the plaintiffs.

Charles W. Henry was here recalled by the plaintiffs' counsel, and said : The book now shown to me is the journal of the New York and Saugerties White Lead Company; I cannot point out any item in this book that refers to the note in this suit; there is no item in the book now shown me that refers to the note in this suit. Being shown an entry of September 11th, 1854, and asked whether it has any relation to the note in this suit, says it has not.

Shown another book, witness says : It is the cash book of the New York and Saugerties White Lead Company; there are no items in this book that have reference to the note in suit, or out of any of the notes in suit or transactions in any way. Witness shown item September 11, 1854, says, it has no reference to the note in suit, or to any transaction out of which it arose.

Being shown entry of December 1, 1854, says : He don't think it refers to the note in suit. Being asked if he knows, says, it did not refer to it. I have made diligent search for the bill book, and can't find it; the bill book should be with the other books in the hands of the receiver.

Re-direct resumed : I can recollect the entry on the bill book in reference to the note in suit; I can't recall the precise words, but I recollect the substance of the entry on the margin of the bill book of the New York and Saugerties White Lead Company in reference to this note : it is

as follows : " This note was used by the Spring Valley Shot and Lead Manufacturing Company, discounted at their bank, of which they received the proceeds, and is to be paid by them at maturity"; this is substantially the entry, and is the very words of the entry, as near as I can recollect; the White Lead Company never kept any account with the Mechanics' Banking Association, and never received any part of the proceeds of the note in this suit.

Cross-examination resumed : This bill book contained all the bills receivable and bills payable of the White Lead Company; as near as I can recollect, the contents of the body of the note were, the date of the note, the time it had to run, the drawer's name, and date of maturity and the amount, entered in the same way, as all the notes, excepting the marginal notes.

Re-direct resumed. This bill book, under the name of bills payable, contained a memorandum of all the notes indorsed by the company, whether for accommodation or otherwise.

The evidence here closed, and the judge, after hearing the counsel for the respective parties, rendered the following decision :

This action was brought upon a promissory note for twelve hundred and fifty dollars, at seventy-five days, dated March 19, 1855, made by James B. Townsend, to the order of the New York and Saugerties White Lead Company, and endorsed by said company by James McCullough, the president, and also by the Spring Valley Shot and Lead Company, by its president, and discounted by the plaintiffs.

It appears in evidence that the note was discounted by the plaintiffs, upon the application of the defendants, The Spring Valley Shot and Lead Company, and the proceeds passed to the credit of said company in the books of the bank, and drawn out upon its checks in the usual course of business. So far as the maker and the Saugerties White Lead Company are concerned, the note was, primarily, at

least, a mere accommodation note; and so far as the White Lead Company is concerned, its president had no right to make an accommodation indorsement, and such indorsement, in the hands of any person having knowledge of the facts, would not be binding. But upon the face of this note, it was in due form like ordinary commercial paper; there was nothing upon the face of the paper and otherwise to give notice to the plaintiffs that it was not an ordinary business note taken by the lead company of Townsend, and transferred to the shot company in the ordinary course of business, for value. I think the plaintiff is to be regarded as a *bona fide* holder of the paper, and entitled as such to recover upon it, within the reasons of cases cited ·by Judge SELDEN, in *Farmers' & Mechanics' Bank of Kent County* agt. *Butchers' & Drovers' Bank* (*on pages* 129 *and* 135 *of the* 16*th N. Y. R.*, 2 *Smith*;) *and The Bank of Genesee* agt. *The Patchin Bank*, (3 *Kern.*, 315.)

I think the plaintiff is entitled to recover the amount of the note, with interest and protest, and direct judgment accordingly.

The defendants, the New York and Saugerties White Lead Company, except to the finding of the court, in deciding: *First*, that the plaintiff is to be regarded as a *bona fide* holder of the note in suit; *second*, that the plaintiff is entitled to judgment; *third*, in not deciding that the defendants are entitled to judgment; and that the complaint should be dismissed, as to them, with costs.

Defendants appealed to the general term.

*New York General Term, November,* 1860.

SUTHERLAND, BONNEY and HOGEBOOM, *Justices.*

THE plaintiffs sued to recover the amount of a promissory · note drawn by James B. Townsend, and dated the 19th day of March, 1855, for the sum of twelve hundred and fifty dollars, payable seventy-five days after date, to the order of The New York and Saugerties White Lead Com-

pany, and indorsed by them and the other defendant, and discounted by the plaintiffs in good faith before the maturity, and for value. The note was discounted at the instance of the last named defendant, who received the proceeds in whole or in part—the evidence being conflicting, whether the White Lead Company did or did not receive a part of the proceeds. The cause was tried before Mr. Justice SMITH, without a jury, in October, 1858, and he directed judgment for the plaintiffs. The White Lead Company appealed to this court.

CHARLES E. MILLER, *for plaintiffs.*
R. H. BOWNE, *for defendants.*

HOGEBOOM, Justice. I think this judgment must be affirmed, for the reasons stated in the opinion of the learned justice who tried this cause. The authority of McCullough to sign and indorse notes for the White Lead Company is sufficiently established. Townsend was an accommodation maker of the note.

The evidence leaves it doubtful whether the New York and Saugerties White Lead Company was an accommodation or business indorser of the note; and the learned judge has not explicitly found that fact. But assuming that it was only an accommodation indorser, it appears that the note was a negotiable instrument, in the ordinary form of commercial paper, indorsed by corporations having authority in their legitimate business to indorse commercial paper, discounted by the plaintiffs, in good faith, and for value, before maturity, with no facts before them to induce a suspicion that the paper was not business paper, and having no knowledge that it was otherwise. The circumstances were such as to lead to the presumption that it was business paper, and the sole question is, whether the plaintiffs were bound explicitly to inquire and ascertain whether the indorsement of the White Lead Company was

a mere accommodation indorsement, in which case they, as a corporation, would have no right to make the same ? I think, under the circumstances of this case, the plaintiffs were not required to institute such an investigation, and absolutely to ascertain the fact; and therefore, that the judgment should be affirmed.

The cases bearing on this point are : *The Farmers' and Mechanics' Bank of Kent* agt. *The Butchers' and Drovers' Bank*, (16 *N. Y. R.*, 129, 131, 132–135 ;) *The Bank of Genesee* agt. *The Patchin Bank*, (13 *N. Y. R.*, 315 ;) *Stoney* agt. *American Life Insurance Company*, (11 *Paige*, 565 ;) *Safford* agt. *Van Wyck*, (4 *Hill*, 442, *and other cases cited.*)

SUTHERLAND, J., concurred.    BONNEY, J., dissented.